UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KATHY BAUER,

      Plaintiff,

  v.

THE COMMISSIONER of the Social
Security Administration,

      Defendant.

16-CV-729
DECISION AND ORDER

On September 12, 2016, the plaintiff, Kathy Bauer, brought this action under the Social Security Act (the "Act"). She seeks review of the determination by the Acting Commissioner of Social Security (the "Commissioner") that she was not disabled. Docket Item 1 at 3. On October 17, 2016, Bauer moved for judgment on the pleadings, Docket Item 10, and on June 26, 2017, the Commissioner responded and cross moved for judgment on the pleadings. Docket Item 12.

For the reasons stated below, this Court finds that the decision of the Commissioner is not supported by substantial evidence because the ALJ failed to adequately develop the record. Accordingly, the plaintiff's motion is granted in part, the defendant's motion is denied, the Commissioner's decision is vacated, and the claim is remanded for further administrative proceedings consistent with this decision.

## **BACKGROUND**

**I.    PROCEDURAL HISTORY**

On April 23, 2013, Bauer applied for Supplemental Security Income benefits ("SSI"). Tr. 194-99. She claimed that she had been disabled since May 15, 2005, due

to lower back pain, swelling in her feet, shooting pain throughout her whole body, numbness in her legs, and a limited ability to stand for longer than thirty minutes. Tr. 91. Bauer later amended the onset date to December 1, 2010. Tr. 38, 367-68.

On July 11, 2013, Bauer received notice that her application was denied because she was not disabled under the Act. Tr. 105-10. She requested a hearing before an administrative law judge ("ALJ"), which was held on March 9, 2015. Tr. 33. The ALJ then issued a decision on May 12, 2015, confirming the finding that Bauer was not disabled. Tr. 11-32. Bauer appealed the ALJ's decision, Tr. 7-8, but her appeal was denied, and the decision then became final. Tr. 1-3.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Bauer's objection. Although the record indicates that Bauer visited a number of doctors, only those visits most significant to her claim are discussed below.

### A. Mr. Joseph J. Higgins

Bauer met with licensed occupational therapist Joseph J. Higgins for a functional capacity evaluation ("functional evaluation") on December 6, 2013. Tr. 432-39. After extensive testing and clinical evaluation, Mr. Higgins documented his own findings on page one of his report. Tr. 432. Later in the report, Mr. Higgins concluded that: Bauer could perform limited, part-time sedentary work—at most two to three hours per day with limited use of her right hand, Tr. 432; she could sit for only two hours, stand for only thirty minutes, and walk for only fifteen minutes in an eight-hour workday; she must lie down to rest or recline after thirty minutes of sitting, Tr. 435; she should be limited to carrying and lifting fifteen pounds occasionally and five pounds frequently, Tr. 434; she

2

should never reach overhead and should only occasionally reach, handle, finger, feel, and push/pull with her left hand, Tr. 436; she could perform tasks requiring balancing, stooping, kneeling, crouching, crawling, and climbing only 5% of the workday, Tr. 436; and she could use foot controls only occasionally. Tr. 436-37. As support for each of these assessments, Mr. Higgins cited Bauer's subjective complaints, never directly citing his own findings.

### B. Dr. Mary Rykert-Wolf

Beginning in 2008 and throughout the relevant period, Bauer was treated regularly by Mary Rykert-Wolf, M.D., at Lakeshore Family Medicine. Tr. 231, 272-390, 533-684, 723-44. Dr. Rykert-Wolf was generally aware of most, if not all, of Bauer's symptoms. On November 11, 2014, Dr. Rykert-Wolf completed a Medical Source Statement of Ability To Do Work-Related Activities ("medical source statement"). Tr. 527-32. Her findings were based on the functional evaluation performed by Mr. Higgins on December 16, 2013, and substantively were nearly identical. Tr. 527-530.

### C. Dr. Donna Miller

Bauer met with consulting internist Donna Miller, D.O., once, on June 28, 2013, for an internal medicine examination. Tr. 391-95. Based on her findings, Dr. Miller diagnosed Bauer with chronic lower back pain and degenerative disc disease. Tr. 393. She opined that Bauer has a mild limitation for heavy lifting, bending, and carrying. Tr. 394. She made no other medical assessments.

## III. THE ALJ'S DECISION

To assess a claimant's social security application, an ALJ must evaluate the claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ decides whether the claimant suffers from any severe impairments. If there are no severe impairments, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant has a severe impairment or impairments that meet or equal one listed in the regulations, the claimant is disabled. But if the ALJ finds that no severe impairment or impairments meet those listed in the regulations, the ALJ proceeds to step four.

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. When determining a plaintiff's RFC for claims filed before March, 27, 2017, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c).

After determining the claimant's RFC, the ALJ completes step four. If a claimant can perform past relevant work, the claimant is not disabled and the analysis ends. But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). In the fifth and final step, the Commissioner has the burden of showing

that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Bauer was not currently engaged in a "substantial gainful activity." Tr. 19. At step two, the ALJ found that Bauer had the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, lumbar radiculopathy, carpal tunnel syndrome, foot impairment, diabetes/hyperinsulema, migraine headaches, and obesity. Tr. 20. At step three, the ALJ found that Bauer's severe impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 20-21.

In assessing Bauer's RFC, the ALJ found that Bauer can perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a),[1] 416.967(a), but cannot kneel, crouch, or crawl; climb ladders, ropes, or scaffolds; work around hazards such as unprotected heights, moving mechanical parts, or flammable liquids; work in extreme heat, cold, or

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required only occasionally and other sedentary criteria are met. 20 CFR § 404.1567(a).

dampness; engage in any repetitive gripping/grasping activities; or (occasionally) operate foot controls. Tr. 22.

The ALJ purportedly based these findings on the medical evidence in the record and on the opinion of Dr. Miller. Tr. 24. He gave the opinion of Mr. Higgins "little weight" because (a) Mr. Higgins is an occupational therapist, not an "actual medical source"; (b) Mr. Higgins met the claimant for only one evaluation; and (c) Mr. Higgins cited no objective medical data as support for his findings but appeared to base all his findings on the claimant's complaints of pain. Tr. 26. Likewise, the ALJ gave Dr. Rykert-Wolf's opinion "little weight" because it was "in every respect identical in findings, language and explanation to the report filed by Mr. Higgins nearly one year earlier." Tr. 23.

Based on his assessment, the ALJ determined at step 4 that Bauer would be unable to perform any past relevant work. Tr. 29. But at step 5, the ALJ relied on the testimony of the vocational expert to conclude that Bauer could perform the requirements of three specific jobs in the national economy[2] that qualify as substantial gainful work. Tr. 30.

## LEGAL STANDARDS

I.  **DISTRICT COURT REVIEW**

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are

---

[2] The ALJ found that Bauer could perform the requirements of (1) an Order Clerk Food and Beverage (DOT # 209.567-014), (2) a Charge Account Clerk (DOT # 205.367-014), and (3) a Telephone Quotation Clerk (DOT # 237.367-046). Tr. 26.

6

supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court must accept the Commissioner's findings of fact if they are supported by more than a scintilla of evidence, including "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

## II.    FAILURE TO DEVELOP THE RECORD

In formulating the claimant's RFC, an ALJ is required to rely on actual medical findings contained within the record and may not reach a diagnosis without substantial evidence that supports the decision. *Goldthrite v. Astrue*, 535 F. Supp. 2d 329, 339 (W.D.N.Y. 2008). "[A]n ALJ is not qualified to assess a claimant's [RFC] on the basis of bare medical findings, and as a result an ALJ's determination of a [RFC] without a medical advisor's assessment is not supported by substantial evidence." *Murray*, 2018 WL 549416, at *3 (quoting *Wilson v. Colvin*, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015)). "Where . . . the medical findings and reports merely diagnose the claimant's impairments without relating the diagnoses to specific physical, mental, and other work-related capacities, the ALJ's determination of residual functional capacity without a medical advisor's assessment of those capacities is not supported by substantial evidence." *Palascak v. Colvin*, 2014 WL 1920510, at *9 (W.D.N.Y. May 14, 2014) (internal quotations omitted).

In other words, the ALJ may not independently make a connection between the medical data and the claimant's actual functional capabilities. *Kain v. Colvin*, 2017 U.S. Dist. LEXIS 73595, at *8 (W.D.N.Y. May 14, 2017). There may be instances in which an ALJ may draw commonsense inferences based on actual medical data in the absence of a medical provider's assessment. *Murray*, 2018 WL 549416, at *3. But where there are "complex medical findings" or where the plaintiff has "multiple severe impairments," the ALJ may not draw such inferences. *Id.*

### A. Reliance on Dr. Miller

Here, the ALJ relied almost exclusively on Dr. Miller's medical assessment of a single visit as the basis for his RFC. Tr. 28 ("[T]he above residual functional capacity is based on medical evidence in the record, and on the opinion of Dr. Miller."). Dr. Miller found that Bauer had some limitations only for heavy lifting, bending and carrying. Tr. 394. But her assessment does not support several other specific conclusions in the ALJ's RFC, including the findings that the claimant "can occasionally climb ramps or stairs, and can occasionally balance"; "cannot work in extreme heat, cold, or dampness"; and cannot "engage in any repetitive gripping/grasping activities; or (occasionally) operate foot controls." Tr. 22. And to the extent that the ALJ did not rely on Dr. Miller's assessment, he based his conclusion on his own bare medical findings, something that is not permitted. *See Murray*, 2018 WL 549416 at *3; *Kain*, 2017 U.S. Dist. LEXIS 73595 at *8.

Because the opinion of Dr. Miller alone is not enough to support these conclusions, and because the ALJ did not rely on other medical assessments to

8

determine the RFC, there is an "evidentiary gap in the record." [3]  *See Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) (finding that when there are elements of an RFC that lack evidentiary support, an "evidentiary gap in the record" is created). Indeed, the ALJ explicitly noted that he gave treating physician Rykert-Wolf's opinion "little weight," likewise gave Mr. Higgin's opinion "little weight," but gave Dr. Miller's opinion only "some weight," disagreeing with some of Dr. Miller's conclusions. Tr. 20-30.  On its face, that suggests that the ALJ reached a conclusion on his own and not based on a medical assessment.  *See Murray*, 2018 WL 549416, at *3.

The ALJ should have filled this gap by re-contacting one or more physicians to develop the record.  *See Khan v. Comm'r of Soc. Sec.*, 2015 US Dist. LEXIS 133811, at *40 (E.D.N.Y. Sept. 30, 2015) (holding where the record does not contain medical assessments that support the conclusions made in the RFC, then the ALJ may be in a situation where he must recontact a physician or physicians).  What is more, the ALJ was required to recontact both Mr. Higgins and Dr. Rykert-Wolf before rejecting their opinions since it is unclear whether their opinions were based only on Bauer's subjective complaints, as the ALJ suggests, or on actual medical evidence.  *See Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2003) (reversing the ALJ's decision, in part, for a failure to seek clarification of a physician's "remarkably vague" report.)  The ALJ's failure to recontact these sources to resolve their reports' ambiguities, and to cure the

---

[3] Alternatively, if basis for the conclusions made in the RFC were commonsense inferences the ALJ drew when considering Bauer's severe impairments, under *Murray*, there still is a "gap in the record," because here, not only does Bauer suffer from multiple severe impairments, but the medical evidence in the record also is indeed complex.

9

evidentiary gap in the record, constitutes an error that requires remand. *See Gross v. Astrue*, 2014 WL 1806779, at *16 (W.D.N.Y. May 7, 2014).

### A. Failure to Recontact Mr. Higgins

In explaining his decision to give Mr. Higgins's functional evaluation little weight, the ALJ emphasized that Mr. Higgins's findings seemed to be based exclusively on the subjective complaints of Bauer and not on any actual medical data. If true, that might be reason to afford an opinion little weight. *See Roma v. Astrue*, 468 Fed. App'x 16, 19 (2d Cir. 2012) (providing that an ALJ may lend less weight to an opinion when it is based primarily on the subjective complaints of a plaintiff.)

But it is far from clear that Mr. Higgins formulated his opinion based solely on Bauer's subjective complaints, in fact, the ALJ said as much. *See* Tr. 22 (Mr. Higgins "***appeared*** to base all of his highly restrictive findings on the claimant's subjective allegations") (emphasis added). But Mr. Higgins included objective findings early in his report, and while he did not explicitly cite those findings when making his recommendations, he may well have intended to incorporate those findings to support his opinions and recommendations. At a minimum, the ALJ should have recontacted Mr. Higgins to clarify the basis for his functional evaluation. *See Selian*, 708 F.3d at 421 (2d Cir. 2003).

### B. Failure to Recontact Dr. Rykert-Wolf

The ALJ also erred in failing to recontact Bauer's treating physician, Dr. Mary Rykert-Wolf. Under 20 C.F.R. § 404.1527(a)(2), a "treating physician" is a claimant's own acceptable medical source who has provided ongoing medical treatment. A treating physician's opinion should be given controlling weight so long as (a) it is the

10

product of well-supported, medically accepted clinical and laboratory diagnostic techniques, and (b) it is not inconsistent with the other information in the record. 20 C.F.R. § 404.1527(c)(2).

Here, Dr. Rykert-Wolf qualifies as Bauer's treating physician under 20 C.F.R. § 404.1527(a)(2) because Dr. Rykert-Wolf treated Bauer consistently during the relevant period. Yet, despite Dr. Rykert-Wolf's status as a treating physician, her opinion was afforded "little weight" because it was "in every respect identical in findings, language and explanation to the report filed by Mr. Higgins nearly one year earlier." Tr. 23. In other words, the ALJ concluded that because Mr. Higgins's evaluation appears to have served as the basis for Dr. Rykert-Wolf's medical source statement, Dr. Rykert-Wolf's opinion was not the product of well-supported medically accepted techniques but rather was based exclusively on Bauer's subjective complaints. *See* Tr. 23.

But given Dr. Rykert-Wolf's familiarity with Bauer's ailments, it may well be that Dr. Rykert-Wolf simply agreed with Mr. Higgins's findings and saw no reason to rewrite them in her own words. Indeed, it is little more than speculation—speculation that might well be offensive to a treating physician—to suggest that that the physician simply rubber-stamped the unsupported findings of a therapist. Stated another way, Dr. Rykert-Wolf may not have blindly parroted Mr. Higgins's findings at all. Accordingly, the ALJ at the very least should have recontacted Dr. Rykert-Wolf to clarify what served as the basis for her opinion. *See Hall v. Astrue*, 677 F. Supp. 2d 617, 626 (W.D.N.Y. Dec. 20, 1996) ("An ALJ is required to recontact a treating physician in order to clarify the physician's opinion, when the opinion 'contains a conflict or ambiguity that must be resolved.'") (*quoting Stevens v. Comm'r of Soc. Sec'y Admin.*, 2008 WL 5057029, *5

(N.D.N.Y. Nov. 24, 2008)); *see also Lester v. Chater*, 81 F.3d 821 (9th Cir. 1995) ("[the] fact that [the treating physician] agreed with the findings of [an other source] provides no basis for rejecting his opinion. If anything, the similarity of their conclusions provides reason to credit the opinions of both."). For these reasons, in addition to the failure to recontact Mr. Higgins, the ALJ's failure to recontact Dr. Rykert-Wolf left an evidentiary gap in the record that requires remand.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 12, is DENIED, and Bauer's motion for judgment on the pleadings, Docket Item 10, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: August 31, 2018
Buffalo, New York

*s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE